# IN THE UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| ROBERT J. BAUER, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) Case No. 13-cv-710 |
| INTERNATIONAL BROTHERHOOD | ) |
| ELECTRICAL WORKERS LOCAL NO. 150 | ) |
| PENSION FUND, | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

AMY J. ST. EVE, District Court Judge:

Plaintiff Robert J. Bauer brings this action against Defendant International Brotherhood Electrical Workers Local No. 150 Pension Fund (the "Plan" or "Defendant") seeking to recover disability benefits allegedly due to him. (*See* R. 1, Compl. ¶ 4.) Before the Court are the parties' cross-motions for summary judgment. (R. 20, Pl. Mot.; R. 25, Def. Mot.) For the following reasons, the Court denies Plaintiff's motion for summary judgment, grants Defendant's motion for summary judgment, and dismisses Plaintiff's claim with prejudice.

## BACKGROUND

### I. Northern District of Illinois Local Rule 56.1

Local Rule 56.1 "is designed, in part, to aid the district court, 'which does not have the advantage of the parties' familiarity with the record and often cannot afford to spend the time combing the record to locate the relevant information,' in determining whether trial is necessary." *Delapaz v. Richardson,* 634 F.3d 895, 899 (7th Cir. 2011) (citation omitted). Local Rule 56.1(a)(3) requires the moving party to provide "a statement of material facts as to which

the moving party contends there is no genuine issue." *Cracco v. Vitran Express, Inc.,* 559 F.3d 625, 632 (7th Cir. 2009). "The opposing party is required to file 'a response to each numbered paragraph in the moving party's statement, including, in the case of any disagreement, specific references to the affidavits, parts of the record, and other supporting materials relied upon." *Id.* (citing L.R. 56.1(b)(3)(B)). Local Rule 56.1(b)(3)(C) requires the nonmoving party to present a separate statement of additional facts that requires the denial of summary judgment. *See Ciomber v. Cooperative Plus, Inc.,* 527 F.3d 635, 643-44 (7th Cir. 2008). The parties have complied with their obligations under Local Rule 56.1, and the facts material to their cross-motions for summary judgment are not in dispute.

## II.     Undisputed Facts

### A.     The Plan

The Plan is a multi-employer defined-benefit pension plan that provides benefits to eligible covered employees and their dependents. (R. 19, Def. L.R. 56.1 Stmt. ¶ 1.[1]) Plaintiff is a resident of Wildwood, Illinois and a participant in the Plan. (*See id.* ¶ 3, 5.) The Plan is subject to and governed by the provisions of the Employee Retirement Income Security Act of 1974 ("ERISA"). (*Id.* ¶ 2.) Specifically, the Plan is an "employee pension benefit plan" within the meaning of ERISA § 3(2)(A), 29 U.S.C. § 1002(2)(A). (*Id.*) The written Plan Document sets forth the applicable provisions governing benefits, eligibility, coverage, limitations and administration of the Plan. (*Id.* ¶ 10.)

A group of six Trustees—three of whom the Local Union No. 150 of the International Brotherhood of Electrical Workers (the "Union") appoints and three of whom the National Electrical Contractors Association (the "Association") appoints—administer the Plan pursuant to

---

[1] Citations to the parties' Local Rule 56.1 statements of facts refer collectively to the movant's Local Rule 56.1(a)(3) statement of undisputed facts and the nonmovant's Local Rule 56.1(b)(3) response. For clarity, the Court will use this citation form only when the fact at issue is undisputed.

2

a Trust Agreement. (*See* R. 17, Schrieber Decl. at Ex. 1, the Plan § 1.2.) The Plan Document and the Trust Agreement give the Trustees discretion to interpret the terms of the Plan and administer benefits. (Def. L.R. 56.1 Stmt. ¶¶ 11-12.) Specifically, the Trust Agreement grants the Trustees the power "[t]o determine all questions arising under the Plan and this Trust, including the power to determine the rights or eligibility of persons who are or may become entitled to Plan benefits and the amount of their respective benefits, and to remedy ambiguities, inconsistencies, or omissions . . . ." (*Id.* ¶ 11.) In addition, the Plan Document provides that "[t]o the extent permitted by law, any interpretation of the Plan and any decision on any matter within the Trustees' discretion made by them in good faith is binding on all persons." (*Id.* ¶ 12.)

### B.      Rehabilitation Plan under the Pension Protection Act of 2006

In October 2010, the Trustees adopted a rehabilitation plan pursuant to the Pension Protection Act of 2006, 26 U.S.C. § 432(b). Congress enacted the Pension Protection Act, Pub. L. No. 109-280, 120 Stat. 780 (2006), to address a "pension underfunding crisis" that had resulted from a "perfect storm" of low interest rates, a decline in the stock market, and an increasing number of retirees. *See The Pension Underfunding Crisis: How Effective Have Reforms Been? Hearing before the H. Comm. on Education and the Workforce,* 108th Cong. 2 (2003) (statement of Rep. John A. Boehner, Chairman, H. Comm. on Education and the Workforce). The Act, among other things, sets funding requirements that pension plans must meet every year. *See* 26 U.S.C. § 432(b). A plan that fails to meet these requirements receives a status of either "endangered" or "critical" depending on the estimated funding shortfall. *Id.*

For a plan in "critical" status, the plan sponsor must adopt a rehabilitation plan designed to improve the plan's funding and allow it to emerge from "critical" status within ten years. *Id.* § 432(e). This rehabilitation plan "may include reductions in plan expenditures (including plan

3

mergers and consolidations), reductions in future benefit accruals or increases in contributions, if agreed to by the bargaining parties, or any combination of such actions." *Id.* § 432(e)(3)(A)(i). The plan also may reduce "adjustable benefits," including "disability benefits not yet in pay status," if the plan sponsor deems the reductions appropriate. *Id.* § 432(e)(8)(A)(i), (iv)(I).

On September 28, 2010, the Plan's actuary certified that the Plan was in "critical" status for the plan-year beginning July 1, 2010. (Def. L.R. 56.1 Stmt. ¶ 13; *see also* Schreiber Decl. at Ex. 7.) Pursuant to the Pension Protection Act, the Trustees adopted a Rehabilitation Plan to improve the Plan's funding status on October 4, 2010. (Def. L.R. 56.1 Stmt. ¶¶ 14-15); *see also* 26 U.S.C. § 432(a). Among other things, the Rehabilitation Plan reduced the amount of disability pensions not in pay status as of January 1, 2011 by eliminating the disability pension subsidy. (Def. L.R. 56.1 Stmt. ¶¶ 14-16.) Previously, a participant eligible to receive a disability pension would receive an unreduced pension regardless of his age at the time his employment terminated. (*See* Schreiber Decl. at Ex. 3.) Under the Rehabilitation Plan, if a participant's employment terminated due to a disability before age 63, the Plan would reduce his pension benefits by 0.417% for each month (5% per year) that he retired before the participant's 63rd birthday, up to a total reduction of 60%. (*See* Def. L.R. 56.1 Stmt. ¶¶ 15; *see also* Schreiber Decl. at Ex. 3.)

In October 2010, the Trustees provided all participants, including Plaintiff, a Notice of Critical Status and a Notice of Reduction in Adjustable Benefits. (Def. L.R. 56.1 Stmt. ¶ 15; *see also* Schreiber Decl. at Exs. 3, 7.) The Notice of Critical Status informed participants that the Plan's actuary had certified to the U.S. Department of Treasury that the Plan was in "critical status" for the plan-year beginning July 1, 2010, and as a result, federal law permitted the Trustees to reduce or even eliminate "adjustable benefits"—including disability benefits not yet

in pay status—to improve the Plan's funding. (Schreiber Decl. at Ex. 7.) The Notice of Reduction in Adjustable Benefits explained the various changes in benefits to which the Trustees, the Union, and the employers sponsoring the Plan had agreed. (*Id.* at Ex. 3.) The Notice of Reduction in Adjustable Benefits provided that the changes "will be effective for benefits that begin on or after January 1, 2011." (*Id.*) On July 29, 2011, the Trustees formally amended the Plan Document to incorporate the changes in benefits from the Rehabilitation Plan. (*See* Def. L.R. 56.1 Stmt. ¶ 16.)

### C. Plaintiff's Claim for Benefits

Plaintiff was a member of the Union for nearly thirty years before he stopped working on August 14, 2010 due to a disability. (*Id.* ¶¶ 3, 18-19.) He was 49 years old at the time. (*See id.* ¶ 20.) Plaintiff applied for disability benefits under the Plan in May 2011. (*Id.* ¶ 21.) On June 30, 2011, the Plan sent Plaintiff a pension calculation statement explaining that Plaintiff would receive a monthly benefit of $1,571.92. (Pl. L.R. 56.1 Stmt. ¶ 22; *see also* Schreiber Decl. at Ex. 8.) According to the statement, Plaintiff's full "Monthly Age 65 Benefit" was $3,929.81, but because of an "Early Retirement Reduction, Based on Age 50.42," the Plan would pay only 40% of that amount. (Schreiber Decl. at Ex. 8.)

Plaintiff protested the Plan's calculation of his disability pension benefits. On August 22, 2011, Bennett Choice, counsel for the Plan, advised Plaintiff and his attorney of the grounds for the reduction in Plaintiff's benefits. (Pl. L.R. 56.1 Stmt. ¶ 25; *see also* Schreiber Decl. at Ex. 4.) Mr. Choice informed Plaintiff that the benefit modifications enacted under the Rehabilitation Plan applied to any benefits that commenced on January 1, 2011 or later, and Plaintiff's benefits, under the terms of the Plan, had commenced on February 1, 2011. (Schreiber Decl. at Ex. 4.)

5

Accordingly, Mr. Choice explained that Plaintiff's "pension is subject to reduction for commencement before age 63:"

> The issue for you is whether your disability pension should commence before or after January 1, 2011. Section 7.3 of the Plan provides that a disability pension commences "as of the first day of the calendar month coincident with or next following the date that is five months after the date his or her employment with the Employer terminates because of Permanent and Total Disability." We understand your employment terminated August 2010 due to disability. Based on those facts, your disability pension would commence February 1, 2011. As a result, your pension is subject to reduction for commencement before age 63, as outlined in section 7.3 of the Plan.

(*Id.*)

Plaintiff appealed the Plan's determination to the Board of Trustees on October 3, 2011. (Pl. L.R. 56.1 Stmt. ¶ 26.) The Trustees denied his appeal on October 18, 2011. (*Id.* ¶ 27.) The Trustees based their decision on Section 7.3 of the Plan Document, the Rehabilitation Plan, and the amendments to the Plan that the Trustees had adopted pursuant to the Rehabilitation Plan. (Schreiber Decl. at Ex. 5.) Mr. Choice wrote to Plaintiff's counsel explaining the grounds for the denial: "The benefit modifications adopted by the Trustees were effective for disability pensions commencing January 1, 2011 and later. Because Mr. Bauer's pension commenced after 2010, his pension is subject to the reduction (regardless of when he became disabled). Therefore, his appeal was denied." (Pl. L.R. 56.1 Stmt. ¶ 27; Schreiber Decl. at Ex. 5.)

Having exhausted the Plan's appeal process (*see* Pl. L.R. 56.1 Stmt. ¶ 28), Plaintiff filed this suit on January 29, 2013. The Court has subject matter jurisdiction over this action pursuant to 29 U.S.C. § 1132(e)(1). Additionally, the parties agree that the Court has personal jurisdiction over the parties, and venue is proper in this District under 29 U.S.C. § 1132(e)(2). (*See* Pl. L.R. 56.1 Stmt. ¶ 2-3.)

**SUMMARY JUDGMENT STANDARD**

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute as to any material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). In determining summary judgment motions, "facts must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts." *Scott v. Harris,* 550 U.S. 372, 380, 127 S. Ct. 1769, 167 L. Ed. 2d 686 (2007). The party seeking summary judgment has the burden of establishing that there is no genuine dispute as to any material fact. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). After "a properly supported motion for summary judgment is made, the adverse party 'must set forth specific facts showing that there is a genuine issue for trial.'" *Anderson,* 477 U.S. at 255 (quotation omitted). The nonmovant "must begin to meet this burden by submitting admissible, supporting evidence in response to a proper motion for summary judgment." *Harney v. City of Chicago,* 702 F.3d 916, 925 (7th Cir. 2012).

**ANALYSIS**

**I.   Standard of Review of the Trustee's Decision**

The parties agree that the Plan and the Trust Agreement[2] confer the Trustees with discretion to interpret and administer the Plan, "including the power to determine the rights or eligibility of persons who are or may become entitled to Plan benefits and the amount of their respective benefits." (*See* Def. L.R. 56.1 Stmt. ¶ 11; R. 16, Def. Mem. at 6-7; R. 21, Pl. Mem. at 4-5); *see also Black v. Long Term Disability Ins.,* 582 F.3d 738, 743-744 & n.2 (7th Cir. 2009).

---

[2] Section 1.2 of the Plan incorporates the terms of the Trust Agreement into the Plan. (*See* Schreiber Decl. at Ex. 1, Plan § 1.2.)

The Court, therefore, must limit its review under the arbitrary and capricious standard. *See Tompkins v. Central Laborers' Pension Fund,* 712 F.3d 995, 999 (7th Cir. 2013) (quoting *Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101, 115, 109 S. Ct. 948, 103 L. Ed. 2d 80 (1989)); *see also Reddinger v. SENA Severance Pay Plan,* 707 F.3d 702, 706 (7th Cir. 2013). Under the arbitrary and capricious standard, the Court will uphold the Plan administrator's decision if "(1) it is possible to offer a reasoned explanation, based on the evidence, for a particular outcome, (2) the decision is based on a reasonable explanation of relevant plan documents, or (3) the administrator has based its decision on a consideration of the relevant factors that encompass the important aspects of the problem." *Tompkins,* 712 F.3d at 999 (citation omitted). In short, the Court looks to ensure that the administrator's decision has rational support in the record. *See Becker v. Chrysler LLC Health Care Benefits Plan,* 691 F.3d 879, 885 (7th Cir. 2012); *see also Jackman Fin. Corp. v. Humana Ins. Co.,* 641 F.3d 860, 864 (7th Cir. 2011) ("Under the arbitrary and capricious standard, we overturn the administrator's decision only where there is an absence of reasoning to support it."). The Court, furthermore, must give deference to the Plan administrator's interpretation of the Plan. *See Becker,* 691 F.3d at 890; *see also Hess v. Reg–Ellen Mach. Tool Corp.,* 423 F.3d 653, 662 (7th Cir. 2005) (courts "view the contractual ambiguity through a lens that gives broad discretion to the plan administrator to interpret the plan." (citation omitted)).

## II. Plaintiff's Motion for Summary Judgment

Plaintiff argues that that the Trustees' decision to reduce his disability benefits controverts the plain language of Section 5.3 of the Plan, which, according to Plaintiff, requires the Trustees to determine his benefits based on the terms of the Plan in place at the time his

8

employment terminated. (Pl. Mem. at 6; R. 36, Pl. Reply Br. at 4-5; *see also* R. 29, Pl. Resp. Br. at 2.) Section 5.3 of the Plan states:

> **5.3 Pre-Effective Date Retirements.** Subject to the following provisions of this subsection 5.3, the benefits payable under the Plan to or on account of any Employee whose employment with the Employers terminated before the Effective Date, to the extent permitted by law, will be determined in accordance with the terms of the Plan as in effect from time to time prior to that date.

(*Id.; see also* Plan § 5.3.) Plaintiff argues that the term "Effective Date," as used in Section 5.3, refers to the effective date of any amendments to the Plan. (*See* Pl. Mem. at 7; Pl. Reply Br. at 2.) Thus, under Plaintiff's interpretation, any amendments to the Plan that took effect after August 14, 2010, when Plaintiff's employment terminated, do not apply to his claim for disability benefits. (*See* Pl. Mem. at 7.) Plaintiff argues that because the Trustees failed to consider Section 5.3 in determining his disability benefits, their decision was arbitrary or capricious, and the Court should overturn it. (*Id.*) The Court disagrees.

"As a general rule, federal common law principles of contract interpretation govern the interpretation of ERISA plans." *Frye v. Thompson Steel Co., Inc.,* 657 F.3d 488, 493 (7th Cir. 2011) (internal quotations and citation omitted). Under these principles, "[c]ontracts must be read as a whole, and the meaning of separate provisions should be considered in light of one another and the context of the entire agreement." *Young v. Verizon's Bell Atl. Cash Balance Plan,* 615 F.3d 808, 823 (7th Cir. 2010) (citing *Taracorp, Inc. v. NL Indus., Inc.,* 73 F.3d 738, 745 (7th Cir. 1996)). "Contract interpretations should, to the extent possible, give effect to all language without rendering any term superfluous." *Id.*

The Plan specifically defines "Effective Date," when capitalized: "The 'Effective Date' of the Plan as set forth herein is January 1, 2010." (*See* Plan § 1.3.) Importing this definition into Section 5.3 reveals the flaw in Plaintiff's argument: Section 5.3 applies only to benefits of employees whose employment terminated before January 1, 2010. (*Id.* §§ 1.3, 5.3); *see also*

9

*Young,* 615 F.3d at 813 ("Contracts must be read as a whole, and the meaning of separate provisions should be considered in light of one another and the context of the entire agreement."); *Lafayette Life Ins. Co. v. Arch Ins. Co.,* 784 F. Supp. 2d 1034, 1042-43 (N.D. Ind. 2011) ("A basic principle of contract interpretation is that the court will apply definitions for defined terms . . . ." (collecting cases)). It is undisputed that Plaintiff's employment terminated in August 2010, well after the January 1, 2010 "Effective Date" defined in the Plan. (*See* Pl. L.R. 56.1 Stmt. ¶ 9.) Section 5.3, therefore, does not apply to Plaintiff.

Plaintiff argues that "Effective Date" is not a defined term because the Plan does not include it in the "Definitions" section (Section 2) of the Plan. (*See* Pl. Reply. Br. at 3.) This argument is without merit. A contract need not set forth the meaning of every defined term under the heading "Definitions" to avoid ambiguity. Nor must a definition "have to read 'noun X is defined as . . . .'" *See Bartel v. NBC Universal, Inc.,* 543 F.3d 901, 904 (7th Cir. 2008). The question is whether "[a] reasonable person reading [the language at issue] would not be confused about the meaning of the words . . . as they are used in the agreement." *Id.* Plaintiff cannot simply substitute the unambiguous definition of "Effective Date" provided in the Plan with a definition more favorable to his cause. *See id.* at 903-04; *see also Kirby v. Frontier Medex, Inc.,* No. ELH-13-00012, 2013 WL 5883811, at *7-8 (D. Md. Oct. 30, 2013) (rejecting the plaintiff's argument that the court should ignore the defined "Date of Termination" because doing so would improperly "subordinate the definitions on the face of the Plan to those the Court can cull from 'ordinary use' and 'common understanding'").

Plaintiff attempts to manufacture an ambiguity by arguing that "Section 5.3 was clearly inserted into the Plan in order to protect individuals whose employment terminated prior to any amendment." (Pl. Reply Br. at 3.) Plaintiff's argument is circular. This alleged purpose makes

sense only if one first assumes that the term "Effective Date" means the effective date of any amendments to the Plan. The Plan, however, unambiguously defines "Effective Date" to mean January 1, 2010. As Defendants explain, January 1, 2010 is the effective date of the last Plan restatement. (*See* R. 27, Def. Resp. Br. at 3 n.2; *see also* R. 37, Pl. Resp. to Def. L.R. 56.1 Stmt. of Add'l Facts ¶ 4.) Viewed in this light, Section 5.3 protects employees whose employment terminated before the Plan restatement on January 1, 2010. Section 5.3 says nothing about the effect of amendments to the Plan on employees whose employment continued beyond January 1, 2010.

Finally, Plaintiff cites *Filipowicz v. American Stores Benefit Plans Committee,* 56 F.3d 807 (7th Cir. 1995), and three out-of-circuit cases in support of his argument that "any amendment made with an Effective Date after [Plaintiff's] employment terminated cannot be applied to his claim." (*See* Pl. Mem. at 6-10.) Those cases, however, are distinguishable. In *Filipowicz,* the Seventh Circuit held that, as a matter of general insurance law, a plaintiff's right to the proceeds of a supplemental life insurance policy vested on the day of the insured's death, and thus, any modifications to the policy made after that day had no effect on the plaintiff's entitlement to the policy proceeds. *See* 56 F.3d at 815. Unlike in *Filipowicz,* however, Plaintiff's disability benefits had not vested before the changes in the Rehabilitation Plan took effect. Indeed, Plaintiff admits as much in his reply brief. (*See* Pl. Reply Br. at 4 ("Unlike pension benefits, a welfare benefit plan may be amended at any time to reduce or eliminate a participant's benefits prior to the time a claim for said benefit 'accrues.' Absent language to the contrary, a claim for welfare benefits generally 'accrues' once a claim has been denied."

(citations omitted).); *see also Hackett v. Xerox Corp. Long-Term Disability Income Plan,* 315 F.3d 771, 774 (7th Cir. 2003).[3] Accordingly, Plaintiff's reliance on *Filipowicz* is misplaced.

Moreover, the insurance policy at issue in *Filipowicz* expressly provided that "an amendment will not affect a claim incurred before the date of change." *See* 56 F.3d at 815. Section 5.3 of the Plan, in contrast, protects only the benefits of employees whose employment terminated before January 1, 2010 from the effect of subsequent amendments and, as explained above, does not apply to Plaintiff's claim for unreduced disability benefits. *Filipowicz,* therefore, cannot save Plaintiff's claim.

Nor can any of the three out-of-circuit cases on which Plaintiff relies. In *Gibbs v. CIGNA Corp.,* 440 F.3d 571 (2006), and *Shane v. Albertson's Inc.,* 504 F.3d 1166 (9th Cir. 2007), the plan documents at issue expressly stated that any modifications made after the employee's disability occurred would not affect his or her disability benefits under the plan. *See Gibbs,* 440 F.3d at 577 ("Any modification or termination will not affect your right to benefits from a covered *disability that occurred before* the termination or modification." (emphasis in original)); *Shane,* 504 F.3d at 1168 ("[A]ny amendment to the Plan shall be effective only with respect to Total Disabilities which commence on and after the effective date of the amendment. Total Disabilities *commencing prior to the effective date of a Plan amendment* are to be provided for

---

[3] In *Hackett,* the Seventh Circuit determined that absent any ambiguity regarding when a benefit vests, the controlling plan for determining a participant's entitlement to disability benefits is the plan in effect when the benefits were denied:

> If benefits have not vested, the plan participant does not have an unalterable right to those benefits. The fact that benefits have not vested suggests that the plan is malleable and the employer is at liberty to change the plan and thus change the benefits to which a participant is entitled. Since the employer can change the plan, then it must follow that the controlling plan will be the plan that is in effect at the time a claim for benefits accrues. . . . We have held that a claim accrues at the time benefits are denied. . . . Therefore, absent any language suggesting ambiguity on the vesting question, the controlling plan must be the plan in effect at the time the benefits were denied.

*Hackett,* 315 F.3d at 774 (citations omitted).

under the terms of the Plan in effect at the time those disabilities commenced." (emphasis added)). Section 5.3 of the Plan contains no such language.

Furthermore, in the last out-of-circuit case on which Plaintiff relies, *Baker v. Ceridian Corp.,* 122 F.3d 628 (8th Cir. 1997), the Eighth Circuit considered whether the following language in the summary plan description prohibited the defendant from retroactively changing the long-term disability benefits it offered: "While on Long-Term Disability Status the company will pay the premiums for all the company-sponsored benefits (medical, life, and dental) for which you and your defendants [sic] were enrolled before your disability began. The company will continue paying all premiums until you and your dependents are no longer eligible for the plans." *Id.* at 635. The court determined that this language, combined with another statement reserving the company's right to change or discontinue this policy if necessary, created an ambiguity in the plan, which opened the door for the court to consider extrinsic evidence of the plan's meaning. *Id.* at 638. Here, in contrast, the language in Section 5.3, combined with the definition of "Effective Date" provided in the Plan, unambiguously refutes Plaintiff's proposed interpretation of the Plan.

In sum, Section 5.3, by its plain terms, does not apply to Plaintiff's claim for disability benefits. The Trustees, therefore, did not act arbitrarily or capriciously in failing to consider Section 5.3 in calculating the amount of Plaintiff's benefits. *See Becker,* 691 F.3d at 885; *Black,* 582 F.3d at 745-49. Accordingly, the Court denies Plaintiff's motion for summary judgment.

## III. Defendant's Motion for Summary Judgment

Defendant argues that the undisputed facts establish that Trustees did not act arbitrarily or capriciously in calculating Plaintiff's disability benefits. According to Defendant, "[t]he Trustees reasonably and appropriately determined that Mr. Bauer's disability pension benefit

13

commenced after December 2010 and is to be calculated subject to a reduction for each month before his 63rd birthday." (R. 16, Def. Mem. at 7.) The record supports the Trustee's decision to reduce Plaintiff's disability benefits based on his age.

Section 7.3 of the Plan provides that payment of a qualifying participant's disability benefits would begin on "the first day of the calendar month coincident with or next following the date that is five months after the date his or her employment with the Employers terminates because of Permanent and Total Disability . . . ." Plaintiff's employment terminated due to his disability on August 14, 2010. The Trustees, therefore, determined that under Section 7.3 Plaintiff's disability benefits began on February 1, 2011.[4] In addition, because the changes to adjustable benefits contained in the Rehabilitation Plan applied to benefits that began on or after January 1, 2011, the Trustees determined that those changes applied to Plaintiff's disability benefits. Accordingly, the Trustees reduced Plaintiff's monthly disability benefit by 0.417% for each month that Plaintiff had retired before his 63rd birthday, up to 60%, as the Rehabilitation Plan instructed.

Plaintiff does not deny that the Plan was in "critical status" for the plan-year beginning July 1, 2010, thus requiring the Trustees to adopt a rehabilitation plan pursuant to the Pension Protection Act. (*See* Pl. Resp. to Def. L.R. 56.1 Stmt. of Add'l Facts ¶ 2.) Nor does Plaintiff challenge the propriety of the benefit changes effected as part of the Rehabilitation Plan and corresponding amendments to the Plan. (*See* R. 29, Pl. Resp. Br. at 2 ("Plaintiff is not disputing the propriety of the Plan amendment.").) Plaintiff argues only that the Trustees acted arbitrarily or capriciously by failing to consider the plain language of Section 5.3 of the Plan in determining

---

[4] Five months from the date of Plaintiff's termination is January 14, 2011. Section 7.3 required the Plan to begin making payments on the first day of the next month following this date—*i.e.,* February 1, 2011.

14

his disability benefits.  As explained above, this argument is without merit.  (*See* Part II, *supra.*)  The Court, therefore, grants Defendant's motion for summary judgment.

## CONCLUSION

For the reasons explained above, the Court denies Plaintiff's motion for summary judgment and grants Defendant's motion for summary judgment.  The Court dismisses Plaintiff's claim with prejudice.

**DATED:  January 24, 2014**                              **ENTERED**

_____
AMY J. ST. EVE
U.S. District Court Judge